UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN T. MCWHORTER,<br><br>      Plaintiff,<br> v.<br><br>DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>      Defendants. | CASE NO. 3:24-cv-05146-KKE-GJL<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: November 5, 2024 |

  The District Court has referred this 42 U.S.C. § 1983 prisoner civil rights action to United States Magistrate Judge Grady J. Leupold. Currently before the Court is Plaintiff John T. McWhorter's Amended Complaint. Dkt. 14. Upon review, the undersigned finds the Amended Complaint remains deficient in a manner not likely to be cured through further amendment. It is therefore recommended this action be **DISMISSED** for failure to cure pleading deficiencies and for other reasons outlined below.

      **I.**  **BACKGROUND**

  Plaintiff is housed at Stafford Creek Corrections Center, where he is serving a sentence on a 1997 state-court conviction for first and second-degree rape in addition to first-degree

REPORT AND RECOMMENDATION - 1

robbery. *See State v. McWhorter*, Kitsap County Superior Court, Docket No: 97-1-00660-9; *see also State v. McWhorter*, 24 Wash. App. 2d 1022, 2022 WL 16758567 (2022), *review granted, decision rev'd by* 535 P.3d 880 (Wash. 2023). He initiated this action on February 22, 2024, alleging numerous constitutional violations flowing from his state-court conviction and sentence. Dkt. 1-1.

A.  **Dismissal of Initial Complaint with the Opportunity to Amend**

Plaintiff brought a medley of constitutional claims in his Initial Complaint against the Department of Corrections ("DOC"), DOC employees, the Indeterminate Sentence Review Board ("ISRB"), ISRB employees, Washington State Attorney General Robert Ferguson, and Assistant Attorney General John Dittman. Dkt. 1-1, at 2, 5–11. Plaintiff organized his claims into three Counts for relief: Count I alleged violations of the Fourth and Fifth Amendment to the United States Constitution, Count II alleged violations of the Eighth Amendment, and Count III alleged violations of the Thirteenth Amendment. *Id.* at 7–11.

After screening the Initial Complaint, the undersigned recommended dismissal with prejudice. Dkt. 5. This recommendation was based on the finding that each Count in the Initial Complaint rested on a core allegation that was "a demonstrable falsehood," so the entire Initial Complaint was deficient in a manner not curable through amendment. *Id.* at 4. Specifically, the undersigned found that "all of Plaintiff's claims and allegations are based on his mistaken belief that the Kitsap County Superior Court ['Superior Court'] vacated his sentence and judgment on April 28, 2021, and, as a result, [each Count asserts that] DOC employees acted unlawfully *when they refused to release him from custody*." *Id.* at 4 (internal citations omitted) (emphasis added).

The District Court adopted, in part, the undersigned's recommendation. The District Court agreed that Plaintiff's state-court judgment was not vacated and so his "core allegation"

REPORT AND RECOMMENDATION - 2

that he remained in custody without a valid judgment was "without merit." Dkt. 9 at 4. As such, the District Court found nonviable and dismissed all Plaintiff's claims asserting that Defendants acted unlawfully when they refused to release him from custody from April 28, 2021, until December 15, 2021. *Id.* However, because the undersigned did not address Plaintiff's allegations and arguments that, on later dates, Defendants acted unlawfully when they (1) revoked Plaintiff's supervised release and (2) permitted his confinement on an "uncharged" crime, the District Court declined to dismiss with prejudice and, instead, exercised caution in allowing Plaintiff to clarify the nature of these claims by filing an amended complaint. *Id.* at 4–5.

**B.     Amended Complaint**

Plaintiff filed his Amended Complaint on September 26, 2024. Dkt. 14. As before, Plaintiff alleges constitutional violations by the DOC, the ISRB, DOC and ISRB employees, Attorney General Ferguson, and Assistant Attorney General Dittman. *Id.* at 2–6. This time, Plaintiff organizes his claims into four Amended Counts for relief. *Id.* at 7–13. Each Amended Count concerns Plaintiff's placement on supervised release in December 21, 2021, and the eventual revocation of that release.

For the first two Amended Counts, Plaintiff incorporates Counts I and II of his Initial Complaint by reference, stating "the word 'vacate' is replaced…with 'invalid' throughout. Everything else is the same." *Id.* at 7–10. Incorporating Plaintiff's requested substitution, the allegations in support of Amended Counts I and II are in pertinent part: Plaintiff's Fourth Amendment rights were violated on March 23 and August 19, 2022,[1] because warrants for his arrest obtained by community control officers were "predicated on a ~~vacated~~ **invalid** judgment

---

[1] As indicated below, Amended Count III alleges false arrest/imprisonment arising out of arrests taking place on May 23 and August 19, 2022. While Amended Counts II and III may concern the same two arrests, the Court references all dates as they appear in the pleadings.

REPORT AND RECOMMENDATION - 3

and sentence." Dkt. 1-1 at 7–8. On September 30, 2022, Plaintiff's Fourth Amendment rights were again violated through revocation of his supervised release, reinstatement of his "~~vacated~~ **invalid** judgment and sentence," and the addition of a new "uncharged" crime of burglary. *Id.* Following these arrests, Plaintiff alleges his Fifth Amendment rights were violated because "each defendant knew or should have known [his] Judgment and Sentence was ~~vacated~~ **invalid**." *Id.* at 8. Finally, Plaintiff alleges that being forced to serve an "~~vacated~~ **invalid** sentence" constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 9 (alleging that Defendants were given notice of his "~~vacated~~ **invalid**" Judgment and Sentence and are therefore liable for permitting his allegedly unlawful imprisonment).

In Amended Count III, Plaintiff alleges two claims of false arrest/imprisonment concerning his arrests by community control officers on May 23 and August 19, 2022. *Id.* at 10–11. Plaintiff again asserts that the arrest warrants obtained by the community control officers were not supported by a valid judgment and sentence. *Id.* Additionally, Plaintiff alleges that his original state-court judgment did not impose a term of community control/supervision,[2] making the conditions of supervision imposed on his release unlawful from the start. *Id.*

In Amended Count IV, Plaintiff alleges a violation of the *Ex Post Facto* Clause of Article I of the United States Constitution. *Id.* at 12–13. Plaintiff again asserts that his original state-court judgment and sentence did not impose a term of supervision. *Id*. He then alleges that,

---

[2] With his Amended Complaint, Plaintiff submits what appears to be a copy of his original state-court Judgment and Sentence. *Id.* at 22–34. This document states that Plaintiff is subject to a term of DOC supervision for "the period of time provided by law," *Id.* at 27 (citing (citing RCW 9.94A.120 (recodified as RCW 9.94A.505), and "for up to ten years from the date of sentence or release from confinement, whichever is longer, to assure payment of all legal financial obligations." *Id.* at 30 (citing RCW 9.94A.145 (recodified as RCW 9.94A.760)). This document also establishes conditions for Plaintiff's community control/supervision, *Id.* at 27–29, and states that "any violation of this Judgment and Sentence is punishable by up to 60 days of confinement per violation." *Id.* (citing RCW 9.94A.200 (recodified as RCW 9.94B.040)). *See also id* at 34 (stating "in addition to confinement, the judge will sentence me to community placement for at least 1 year…").

REPORT AND RECOMMENDATION - 4

in September 2022, the DOC and ISRB unlawfully revoked his release on supervision and effectively extended his punishment under RCW 9.94A.701. *Id.* According to Plaintiff, this statute only applies to criminal cases occurring after 2009. *Id.* He further alleges that other Defendants were aware of this unlawful extension to his punishment, which makes them liable for his resulting injuries. *Id.*

As relief, Plaintiff seeks release from "ongoing" false imprisonment, compensatory damages, and other miscellaneous relief. *Id.* at 14 (requesting letters of apology from each Defendant).

## II.   STANDARD OF REVIEW

Under the Prison Litigation Reform Act of 1996, the Court must screen complaints brought by prisoners seeking relief against a governmental entity, officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). *See also* 28 U.S.C. §1915(e)(2)(B); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Dismissal on these grounds counts as a "strike" under 28 U.S.C. § 1915(g).

To sustain a 42 U.S.C. § 1983 claim, a plaintiff must show that he suffered a violation of rights protected by the Constitution or created by federal statute, and that the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Although *pro se* pleadings are entitled to a liberal construction, even *pro se* pleadings must raise the right to relief beyond the speculative level. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff must

provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To avoid dismissal, a plaintiff must set forth specific, plausible facts to support his claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–83 (2009).

After informing a *pro se* litigant of any pleading deficiencies, a court must generally grant leave to file an amended complaint if there is a possibility the pleading deficiencies may be cured through amendment. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir.1992); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988)). However, once a *pro se* plaintiff has been given leave to amend and instructed on how to cure the pleading deficiencies, the Court may properly dismiss an action based on deficiencies that remain. *See Swearington v. California Dep't of Corr. & Rehab.*, 624 F. App'x 956, 959 (9th Cir. 2015) (finding the district court did not abuse its discretion in dismissing without leave to amend because the plaintiff did not cure the complaint's deficiencies despite the district court's specific instructions about how to do so); *see also Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint.").

### III. DISCUSSION

Upon review, the undersigned finds that the Amended Complaint remains deficient in ways previously identified by the District Court. In addition, the Amended Complaint contains other deficiencies that make it unlikely Plaintiff will be able to state a viable claim if given a

second opportunity to amend. As such, the undersigned recommends this action be **DISMISSED** and that Plaintiff be denied further opportunities to amend.

A.      **Uncured Deficiencies**

Beginning with the previously identified deficiencies, the District Court noted that several of Plaintiff's claims were "without sufficient detail or are not stated in the complaint at all." Dkt. 9 at 4. Because the undersigned did not address Plaintiff's allegations related to (1) his punishment for an "uncharged crime of first degree burglary" and (2) the revocation of his supervised release/community custody, the District Court afforded Plaintiff the opportunity to clarify the nature of these claims by amending his pleadings. *Id.* Neither of these allegations are sufficiently clarified in the Amended Complaint.

First, Plaintiff's allegation about being subject to punishment for an uncharged burglary offense is not clarified or accompanied by additional facts in the Amended Complaint. Instead, this allegation is reasserted only by reference to the Initial Complaint. Thus, for the reasons stated in the Court's Prior Order, any argument that Plaintiff suffered a constitutional violation related to an uncharged burglary offense should be dismissed for failure to cure pleading deficiencies and for failure to state a cognizable claim. Dkt. 9 at 4 (holding that "any claims based on [this theory] are insufficiently pled and are dismissed" with the opportunity to cure through amendment).

Second, Plaintiff has similarly failed to clarify or cure the supervised release claims asserted in each Amended Count. Plaintiff asserts many of the allegations in support of these claims only by reference to the Initial Complaint, but simply recasting his prior claims as concerning an invalid, rather than a vacated, judgment does not cure the lack of clarity and detail in his prior pleadings. Further, Plaintiff provides no explanation for why his state-court judgment

REPORT AND RECOMMENDATION - 7

and sentence is invalid. As this allegation is central to Plaintiff's theory in support of Amended Counts I, II, and III, the supervised release claims flowing from that theory remain deficient and should be dismissed.

Plaintiff also appears to assert supervised release claims in Amended Counts III and IV based on a theory that his original state-court judgment and sentence did not impose a term of supervision/community custody upon his release from confinement. Dkt. 14 at 11–13. But this theory is undermined by the documents Plaintiff submits with his Amended Complaint, which reflect that his original state-court judgment and sentence ordered a term of community custody for "the period of time provided by law," "for up to ten years from the date of sentence or release from confinement, whichever is longer," and "for at least 1 year [beyond Plaintiff's term of confinement]." *Id.* at 27–30, 34. Plaintiff's assertion that he is being subject to additional or *ex post facto* punishment is further undermined by the December 15, 2021, Order of Release and Supervision submitted with his Amended Complaint. *Id.* at 16–20. This document indicates Plaintiff's original sentence does not expire until November 12, 2028, and that he was released on supervision in accord with RCW 9.94A.730, which provides for *early* release for individuals who are convicted for crimes committed before the age of eighteen. *Id.* at 16. Under this statute, the ISRB is given broad discretion to revoke early release upon its finding that an individual violated his release conditions, which appear to be the circumstances at issue here. *Id.*; Wash. Rev. Code § 9.94A.730.

Therefore, the undersigned concludes the Amended Complaint remains deficient and should be dismissed for failure to cure pleading deficiencies and for failure to state a claim. Out of an abundance of caution, the undersigned will address several additional reasons supporting dismissal of Plaintiff's claims without providing an opportunity to amend for a second time.

### B. Plaintiff Seeks Relief Not Available to Him in a § 1983 Action

First, Plaintiff's claims should also be dismissed because he seeks relief that is only available in habeas corpus proceedings. An "action lying at the core of habeas corpus is one that goes directly to the constitutionality of the prisoner's physical confinement itself." *Preiser v. Rodriguez*, 411 U.S. 475, 503 (1973). Thus, "when a state prisoner is challenging the *very fact* or *duration* of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser*, 411 U.S. at 500 (emphasis added). In contrast, an action challenging the *conditions* of state confinement or seeking financial compensation for the same is not a true habeas action. *Id.* at 494 ("If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement and he is seeking something other than immediate or more speedy release."). In those instances, a prisoner must instead file a civil rights action pursuant to 42 U.S.C. § 1983. *Heck v. Humphrey*, 512 U.S. 477, 482–83 (1994).

Here, Plaintiff challenges the very fact and duration of his confinement in prison and on supervised release. For example, in Amended Count II, Plaintiff challenges the very fact of his imprisonment following the revocation of his supervised release by asserting that his original state-court judgment and sentence is invalid. Dkt. 14 at 9 (incorporating Dkt. 1-1 at 9 by reference). And, in Amended Count III, Plaintiff challenges the very fact of his placement on supervised release by asserting that his original state-court judgment and sentence did not impose a term of supervision. *Id.* at 11. Other examples of Plaintiff challenging the very fact or duration of his confinement abound. *See id.* at 7–11 (incorporating Dkt. 1-1 at 7–10 by reference). Furthermore, the relief requested in the Amended Complaint includes an order directing Plaintiff's immediate release from confinement without supervision. *Id.* at 14. As explained

above, this form of relief is only available in habeas corpus and may not be pursued in this § 1983 action.

**C.     To the Extent Plaintiff Does Not Seek Habeas Relief, His Claims are *Heck* Barred**

Next, to the extent Plaintiff challenges something other than the fact and duration of his confinement and seeks relief other than his immediate release, his claims are barred by the *Heck* doctrine and may not proceed under § 1983 at this time.

Under *Heck*, a § 1983 civil rights complaint cannot proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. This is, in part, because the proper mechanism for obtaining federal judicial review of a state-court conviction is not a § 1983 action, but rather a petition for a writ of habeas corpus filed *after* state judicial remedies have been exhausted under 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Even where a civil-rights plaintiff merely wishes to pursue damages and does not seek to challenge the legality of his conviction, *Heck* still requires the Court to consider whether a favorable decision would call into question the validity of his state-court conviction. Thus, "[t]he critical question under *Heck* is a simple one: Would success on the plaintiff's § 1983 claim 'necessarily imply' that his conviction was invalid?" *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 643 (9th Cir. 2018) (quoting *Heck*, 512 U.S. at 487).

For each of Plaintiff's claims, the answer to this critical question is "yes." In Amended Counts I, II, and III, Plaintiff alleges he was falsely arrested and confined without a valid judgment. Dkt. 14 at 7–11. These claims are similar to the *Heck* barred claims addressed in *Guerrero v. Gates*, 442 F.3d 697 (9th Cir. 2006).

REPORT AND RECOMMENDATION - 10

In *Guerrero*, the Ninth Circuit explained that claims alleging wrongful arrest, malicious prosecution, and conspiracy to bring false charges all rested on the idea that these actions were unjustified because the plaintiff was "innocent of the crimes for which he was convicted." 442 F.3d at 703. Because each claim was premised on a theory that undermined the validity of the underlying conviction, none could proceed under § 1983 unless and until the *Guerrero* plaintiff's conviction was formally invalidated. *Id.* at 705. Similarly, Plaintiff's § 1983 claims asserting that his underlying conviction is invalid may only proceed *after* the state has taken action to formally invalidate, reverse, or vacate his conviction.

As for Plaintiff's *Ex Post Facto* claim in Amended Count IV, this claim is also barred by the *Heck* doctrine. This claim calls into question the validity of the ISRB's decision to revoke Plaintiff's supervised release and, if successful, it would require reinstatement of his release. Dkt. 14 at 12–13. Claims of this sort are routinely found to be barred by the *Heck* doctrine. *See, e.g.*, *McCright v. Schwarzenegger*, No. 08-cv-00804 JW(PR), 2008 WL 3843284, at *2 (N.D. Cal. Aug. 14, 2008), *aff'd*, 376 F. App'x 795 (9th Cir. 2010) (finding *ex post facto* and due process claims implicating release date to be *Heck* barred); *see also Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003) (noting that *ex post facto* claims are *Heck* barred only if success would guarantee release on parole or shorten a prison sentence) (citing *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997)).

**D.   Additional Deficiencies Exist with Respect to all Defendants Named in this Action**

Finally, even if Plaintiff could proceed with his claims under § 1983 at this time, there are numerous deficiencies related to the Defendants named in the Amended Complaint. Section 1983 provides a cause of action against "persons" who proximately cause a constitutional deprivation while "acting under color of state law." *West*, 487 U.S. at 48. This language limits

REPORT AND RECOMMENDATION - 11

the applicability of § 1983 actions against states and their employees. For example, states and state agencies are not "persons" who can be sued under § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990). Likewise, state officials are not "persons" under § 1983 when they are sued for monetary damages in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

As for state officials sued for damages in their individual capacities, immunity doctrines established contemporaneous to the enactment of § 1983 continue to shield federal, state, and county officials from liability. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Particularly relevant here, "absolute immunity" prevents "'the President, judges, prosecutors, witnesses, and officials performing 'quasi-judicial' functions, and legislators'" from being sued individually for monetary damages under § 1983. *Fry v. Melaragno*, 939 F.2d 832, 836 (9th Cir. 1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985)). Absolute judicial immunity applies to those exercising discretion in managing parole. *See Miller v. Davis*, 521 F.3d 1142, 1145 (9th Cir. 2008). Finally, even where an individual defendant is not absolutely immune from suit, a § 1983 plaintiff must still allege sufficient facts demonstrating a defendant's personal participation to successfully state a claim against them. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Here, Plaintiff names the DOC and the ISRB as Defendants. However, neither of these State of Washington agencies is a "person" that may be sued under § 1983. Likewise, each of the sixteen individuals named as Defendants is an employee of the State of Washington, so none can be sued in their official capacities under § 1983. Of these individual Defendants, several are sued for discretionary decisions made with regard to Plaintiff's supervised release and are, therefore, entitled to absolute judicial immunity from suit in their individual capacities. Additionally,

REPORT AND RECOMMENDATION - 12

Attorney General Ferguson and Assistant Attorney General Dittman are entitled to absolute prosecutorial immunity for individual capacity claims concerning the performance of traditional prosecutorial functions. Finally, with few exceptions, Plaintiff fails to put forth sufficient facts demonstrating how each of the individual Defendants personally participated in violating his constitutional rights. Instead, he broadly asserts that "each" Defendant or "all named" Defendants should have known about the alleged violations of his constitutional rights and taken action to prevent further injury. Dkt. 14 at 10, 13; *see also* Dkt. 1-1 at 9 (incorporated by reference in Amended Complaint). These broad, sweeping and conclusory allegations are not enough to state an individual capacity claim.

Thus, for the foregoing reasons, the undersigned finds the Amended Complaint remains deficient in a manner unlikely to be cured and recommends this action be dismissed without granting additional opportunities to amend.

### IV.   CONCLUSION

For the above stated reasons, the undersigned recommends this case be **DISMISSED** for failure to cure pleading deficiencies, for seeking relief only available in habeas corpus, as *Heck* barred, for suing individuals and entities that are immune or may not be sued under § 1983, and for failure to state a viable claim. Dismissal of any claim or claims on the last of these grounds constitutes a strike under 28 U.S.C. § 1915(g).

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda*

*v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **November 5, 2024**, as noted in the caption.

Dated this 21st day of October, 2024.

Grady J. Leupold
United States Magistrate Judge